## 58015. CUEVAS et al. v. THE STATE.

QUILLIAN, Presiding Judge.

The defendant and his four companions appeal their conviction of one count of possession of marijuana with intent to distribute. Deputy Sheriff Dasher, of Liberty County, was patrolling on the evening of March 13, 1978, at approximately 10:30 p.m. when he observed someone walking in the area of a warehouse in which all of the lights were off. He "didn't know whether they were breaking in or what, so [they] stopped to check it out." It was the owner, Sue Youngblood, who advised them "everything was alright." They were aware of her previous "record." The deputy stated: "We realized something wasn't right . . ." They set up surveillance

across the road. A red and silver Thunderbird automobile entered the warehouse area and Sue Youngblood talked to them. She said something about "money" to the driver. The car left and a red and white truck came in and left. Later, a large "white van type truck" backed up to the warehouse door and began unloading its cargo. The deputy sheriff was familiar with marijuana bales from earlier investigations and these "appeared to be bales of marijuana being off-loaded and put into the Coastal Sign warehouse."

When the white van left he radioed Deputy Sheriff Groover and advised him "to stop the truck . . . see if they would give us permission to search the truck, if not we would get a search warrant." Deputy Groover saw the truck approach and he fell in behind for a short distance and then pulled them over. Deputy Dasher had already radioed him that "they were unloading marijuana" at the Coastal Sign warehouse. Defendant Cave was driving and one of the other defendants was a passenger. He asked Cave for his driver's license. It was a Florida license and Cave "talked like he was a foreigner." It was noted that the truck had dual wheels.

Deputy Groover asked defendant Cave if he would mind opening up the doors to the back of the truck. Defendant Cave hesitated and Groover stated: ". . . I told him if he didn't want to open the truck that I would get a search warrant to open it." Cave produced the keys and unlocked the rear door. The remaining three defendants were inside. All five defendants were placed in the rear of the patrol car and deputy Groover saw "marijuana seeds" and "strings from burlap bags" in the back of the truck. He entered the truck and found three loaded pistols.

With the combined knowledge that the white van truck with dual wheels, had been intercepted headed east on I-95, toward the coast, and that the driver spoke with a foreign accent and had a Florida driver's license, all deputy sheriffs began looking for dual wheel tracks leading from the highway to the coastal area. Deputy Stagmeier, after checking several coastal locations, found dual wheel tracks leading toward "Sunbury" and called the GBI agent in charge of the investigation. When the GBI agent arrived they followed the dual wheel tracks to

"Morgan's Dock" where they observed approximately eight boats. It was then between 5:00 and 5:30 a.m. in the morning. The police located a Don Drake on the boat "High Noon." They talked to him about what he had seen and then took a statement from him that he had talked to two people who said they "planned to . . . bring in some stuff." One of them called Miami and then they took on about 1,000 gallons of fuel, but did not take any ice aboard the shrimp boat Miss Carol J and departed. After the Carol J returned one man stated, "that we are going to deal tonight between 7:30 and 8:00 p.m." That evening one of them drove up in his grey and burgundy Thunderbird and then a red and white truck arrived and finally a creme colored Ford van truck arrived. Four armed "spanish or mexican" males got out of the last truck and they began to unload "bales wrapped in 'krocker' sacks from the hold in the Carol J and load them on" the trucks. Drake stated that he went on the Carol J "and saw several bales still in the hold." A justice of the peace came to the dock area, swore the affiants, then issued the search warrants for the Carol J and the Coastal Sign warehouse. He did not participate in the subsequent search. A search of the Carol J revealed 162 bales of marijuana, approximately two tons, in two of the three holds of the ship. A search of the Coastal Sign warehouse turned up 403 bales of marijuana. The defendants appeal their conviction. *Held:*

1. The defendants enumerate but one error — that the trial court erred in denying their motion to suppress the evidence which they contend "was obtained as the direct result of a series of illegal searches and seizures conducted without probable cause." However, they subdivide this enumeration into five separate claims.

A. It is urged that there was a lack of probable cause to search the defendant's truck. This enumeration does not face the principal issue: "Was the search of the truck legal?" We find that it was, as there was a valid consent and probable cause existed to make the search.

Warrantless searches of motor vehicles have always been based on different criteria than those of an individual's home. The principal basis has been the mobility of the auto makes it impractical to immediately secure a warrant. Carroll v. United States, 267 U. S. 132,

153-154 (45 SC 280, 69 LE 543). Less stringent requirements govern search of motor vehicles because the expectation of privacy in one's auto is significantly less than in one's home. South Dakota v. Opperman, 428 U. S. 364, 367 (96 SC 3092, 49 LE2d 1000). However, there are other exceptions to the warrant requirement: 1. consent, 2. incident to lawful arrest, and 3. probable cause with exigent circumstances. United States v. Jeffers, 342 U. S. 48 (72 SC 93, 96 LE 59).

In the instant case the police officials observed from neutral ground (across the road) the developments that aroused their suspicion. A trained police officer, with previous experience in investigations involving bales of marijuana, saw what he thought to be bales of marijuana being unloaded from a white van type truck. This is a sufficient basis for probable cause to stop and search the truck for evidence of residue of marijuana, for as the term implies — in dealing with probable cause the police officer deals with probabilities. Sanders v. State, 235 Ga. 425, 440 (219 SE2d 768); Kiriaze v. State, 147 Ga. App. 832, 833 (250 SE2d 568).

It is not determinative that the officer himself thought that he did not have probable cause to search. Probable cause is not to be determined by law enforcement officials but a neutral, detached magistrate. Coolidge v. New Hampshire, 403 U. S. 443 (91 SC 2022, 29 LE2d 564). The defendant may be anxious to accord undue weight to this officer's opinion that he did not have probable cause, but if a police officer's opinion was controlling, it is doubtful that any searches in the future would ever be found unreasonable as law enforcement officials almost always appear to believe they have probable cause to search.

The criterion is whether, at that moment, the facts and circumstances within his knowledge and of which he had reasonably trustworthy information, including information from other police officers (Whiteley v. Warden, 401 U. S. 560, 568 (91 SC 1031, 28 LE2d 306)), were sufficient to warrant a prudent person in believing the defendants had or were committing an offense. Beck v. Ohio, 379 U. S. 89, 91 (85 SC 223, 13 LE2d 142). We find that there was probable cause.

Secondly, a valid consent search was established. No one could seriously contest the conclusion that suspicious activities were taking place at a late hour in a formerly closed warehouse involving a person with a known criminal background. A Terry-type stop was authorized because of the founded and articulable suspicion that the defendants possessed contraband. Adams v. Williams, 407 U. S. 143, 146 (92 SC 1921, 32 LE2d 612). The officer testified: "I asked him if he minded opening the truck up or the back of the truck, that I wanted to see in the back of the truck. Q. Okay, what did he say? A. He hesitated and then I told him if he didn't want to open the truck that I would get a search warrant to open it . . . He reached in his pocket pulled out a key and unlocked the door. . ."

Consent searches are valid (Davis v. United States, 328 U. S. 582, 583 (66 SC 1256, 90 LE 1453)) but where the state relies upon consent, the burden is upon them to demonstrate that the consent was voluntary, and not the result of duress or coercion, express or implied. Schneckloth v. Bustamonte, 412 U. S. 218 (93 SC 2041, 36 LE2d 854). Voluntariness must be determined from all of the circumstances. *Brand v. State,* 129 Ga. App. 747, 748 (201 SE2d 180). The record discloses the officer did not draw his pistol, or use threatening or coercive language. He made a statement of fact, in essence: "Consent, or I will get a search warrant." Probable cause existed for the issuance of such a warrant and we see no obstacle to the procurement of a valid search warrant if one had been required. Where the statement is made that the subject can consent or a search warrant will be procured, if true, this does not amount to duress or coercion as would invalidate the subsequent search. *Bailey v. State,* 147 Ga. App. 621, 622 (249 SE2d 675); *Code v. State,* 234 Ga. 90 (III) (214 SE2d 873); see also *Guest v. State,* 230 Ga. 569, 571 (198 SE2d 158). "[T]he trial judge was authorized to find that the consent was not the product of coercion, duress or deceit." *Code v. State,* 234 Ga. 90, 95, supra.

B. It is alleged that "[t]he search of Morgan's Dock was accomplished by an illegal trespass upon private property and as such any evidence found was tainted and subject to suppression." Defendant's enumeration is fatally flawed in three aspects. First, there was no search

of Morgan's Dock. Second, there was no trespass. Third, even if there were a trespass, defendants would have no right to avail themselves of such act as a ground for suppression of contraband found on their boat.

There was no search of Morgan's Dock. The officers merely followed dual wheel tracks from a public road onto Mr. Morgan's property (a road) and thence to his business establishment — the dock area. No search was made of the dock itself. The officers were looking for a boat capable of transporting a large amount of marijuana into the United States. Mr. Morgan was present during the latter part of the investigation and made no objection. The officers were in the execution of their office in the investigation of a crime that had been committed in their presence at the Coastal Sign warehouse. See 87 CJS 1006, Trespass, §§ 54, 55. *They were always on business property generally used by and open to the public* — where a person lawfully on the premises is generally considered to be an invitee. See Code Ann. § 105-401 (Code § 105-401). There was no trespass in the sense that there was an unlawful intrusion upon private property, or injury to another's property. United States v. Hanahan, 442 F2d 649 (7th Cir. 1971); United States v. Conner, 478 F2d 1320 (7th Cir. 1973); see generally 27 EGL 428, Trespass, §§ 2, 3.

Last and most important, "[a] person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." Rakas v. Illinois, — U. S. — (99 SC —, 58 LE2d 387, 395). The dock area belonged to Mr. J. W. Morgan — not the defendants. Allegations of illegal searches, in violation of the Fourth Amendment, are personal rights which may not be asserted vicariously. Alderman v. United States, 394 U.S. 165, 174 (89 SC 961, 22 LE2d 176). In Rakas, the Supreme Court held that the test of standing to object to searches by one "legitimately on [the] premises" — as stated in Jones v. United States, 362 U.S. 257 (80 SC 725, 4 LE2d 697) will no longer be followed. They affirmed the rule of Katz v. United States, 389 U.S. 347 (88 SC 507, 19 LE2d 576) that "capacity to claim the protection of the Fourth Amendment depends not upon a property right in the

invaded place but upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." 58 LE2d 401, supra. The defendants asserted "neither a property nor a possessory interest in the [dock] . . . [S]ince they made no showing that they had any legitimate expectation of privacy" in the dock area—a public business generally open to the public, they have not suffered a violation of any Fourth Amendment right. 58 LE2d 404, supra.

C. The warrant to search the Miss Carol J was not invalid for a lack of showing of probable cause that the vessel contained contraband. The police officer had observed what he thought to be bales of marijuana being unloaded from a dual wheeled truck. The search of the truck confirmed that seeds and burlap strings were present in the truck. The truck and its personnel had been stopped during a trip which could have been one of a series of trips. The only dual wheeled tracks leading to the ocean area led to Morgan's Dock. A witness, Don Drake, stated in an affidavit that he had seen the white van truck come to the dock and "four Spanish or Mexican males got out. All of them were wearing pistols . . . [He] heard [one person] tell [another person] that he would meet them at the warehouse. [He] watched as they began to unload bales wrapped in 'krocker' sacks from the hold in the Carol J." After they loaded the first truck another truck was "loaded to the gills . . ." and the driver said "lets go to the warehouse . . ." "[He] went on the Carol J and saw several bales still in the hold."

The test for probable cause is "whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [defendants] had committed or [were] committing an offense." *Sanders v. State,* 235 Ga. 425, 440, supra. We find probable cause to search the Carol J was present.

D. It is alleged that the warrant authorizing the search of the warehouse was void "because it failed to designate the county in which the warehouse was located and where the warrant was to be executed." Defendants argue that a search warrant "must describe the location of

the property to be searched with such exactitude as to allow a prudent officer to locate the place definitely and with reasonable certainty." Therefore, they contend the "fact that the county in which the warehouse to be searched was left blank in the warrant is a fatal defect and renders it void."

The affidavit for the search warrant states: "I am an Officer of the State of Georgia . . . and that I have reason to believe that in *Liberty* County, Georgia on the following described premises: a concrete block warehouse located on Ga. Hwy. 38 appx. 3/10 of a mile east of the SCL Railroad Tracks and bearing a sign 'Coastal Sign Co.' and a metal building with overhead door located next to the warehouse and the curtilage of these buildings . . ." The warrant itself states: "Georgia, *Liberty* County *Justice of Peace* Court To: All Peace Officers of The State of Georgia Affidavit having been made before me by *John Dasher,* an officer charged with the duty of enforcing the Criminal Laws, that he has reason to believe that in ——— County, Georgia ——— on the following described premises: A concrete block warehouse located Ga. Hwy. 38 appx. 3/10 of a mile east of the SCL Railroad tracks and bearing a sign 'Coastal Sign Co.' and a metal building with overhead door located next to the warehouse and the curtilage of these buildings. . . There is now located certain property, namely marijuana which is contraband. . ."

The United States Supreme Court and our appellate courts in Georgia are in agreement that the provisions of the Fourth Amendment of the United States Constitution and Article I, Section I, Paragraph X, of the 1976 Georgia Constitution (Code Ann. § 2-110), requiring "no warrant shall issue except upon probable cause . . . particularly describing the place, or places to be searched, and the persons or things to be seized" is met " 'if the description sufficiently permits a prudent officer with a search warrant to be able to locate the person and place definitely and with reasonable certainty. *Steele v. State,* 118 Ga. App. 433, 434 (164 SE2d 255); Steele v. United States, 267 U. S. 498, 503 (45 SC 414, 69 LE 757).' *Fomby v. State,* 120 Ga. App. 387 (170 SE2d 585)." *Reed v. State,* 126 Ga. App. 323 (1) (190 SE2d 587).

In *Steele v. State,* 118 Ga. App. 433, supra, a copy of

the warrant omitted the name of the County which was used to be directed to the executing officers, but "the affidavit" included the name of the county along with the other description. We found the "omission" did not affect the substantial rights of the accused. Id. at 434. In the instant case we find the description in the warrant was sufficiently definite for *any* executing officer to locate the place to be searched without difficulty. Also, in the factual context of this case, the executing officer had already been observing the building he was to search with the warrant and we find no possibility of substantive error — only possible technical error, which is at most harmless error. This enumeration is without merit.

E. Defendants contend the warrant's affidavit to search the warehouse "contained a material misstatement known by the affiant" and includes information from "prior illegal searches" or "an invalid warrant." We have determined that the prior search of the white van truck was permissive and the warrant for the search of the warehouse was not invalid because of the lack of designation of a county. The warrant for the Miss Carol J was based in part on the statement of Don Drake who was at Morgan's Dock when the police arrived. His statement included the assertion that after the others had loaded the bales aboard the trucks and left: "I went on the Carol J and saw several bales still in the hold." Officers removed 162 bales of marijuana from the holds of the Carol J. Defendants argue that "it is obvious that Drake's statement that he went aboard the boat and saw 'several' bales is not true." Thus, he contends "the warrant issued *to search the warehouse* was subsequently tainted and thus invalid." (Emphasis supplied.)

We emphasize that no argument is made that the statement relating to "several" bales of marijuana remaining aboard the Carol J. tainted the search of the shrimp boat. The argument is advanced that the statement was so inaccurate as to be patently false which was discovered by the officers after they searched the Carol J, thus — the allegedly false statement tainted the subsequent search of the Coastal Sign warehouse by stating in the application for that warrant that a search of the Carol J "has revealed approx. 2 tons of baled

marijuana." We do not agree.

In Franks v. Delaware, 438 U.S. 154 (98 SC 2674, 57 LE2d 667, 672), the Supreme Court held "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and *if the allegedly false statement is necessary to the finding of probable cause,* the Fourth Amendment requires that a hearing be held at the defendant's request. In the event at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." (⌐ phasis supplied.)

Pretermitting the issue of whether the statement by Don Drake was false or made with reckless disregard for the truth, with that evidence disregarded the remaining factual criteria adequately establish probable cause to search the Coastal Sign warehouse. Accordingly, under Franks v. De' are, supra, the search warrant was not invalidated if the Drake statement were excluded. This enumeralon is without merit.

*Judgment affirmed. Smith and Birdsong, JJ., concur.*

ARGUED JUNE 12, 1979 — DECIDED SEPTEMBER 11, 1979 — REHEARING DENIED OCTOBER 3, 1979 — 

*Daryl J. Walker, Robert A. Spiegel, Richard Essen,* for appellants.

*Dupont K. Cheney, District Attorney, Kenneth R. Carswell,* for appellee.