### A96A2349. RICHARDS v. THE STATE.
(484 SE2d 683)

SMITH, Judge.

Brian Richards appeals the judgment entered on his conviction of driving under the influence. OCGA § 40-6-391 (a) (4). He complains, among other things, of the trial court's refusal to grant his motion to suppress. He argues that an officer seized him in violation of his Fourth Amendment rights and that the officer failed to read him the appropriate implied consent warning, as required by statute. Because we find no Fourth Amendment error and conclude any error as to the implied consent warning was harmless, we affirm.

1. Richards contends the trial court erroneously denied his motion to suppress evidence of his intoxication on the basis that he was seized by the arresting officer without reasonable or articulable suspicion of criminal activity.

Atlanta Police Department Officer Brookhisen testified at the suppression hearing that while sitting in his patrol car in a Rio Bravo restaurant parking lot at about 4:30 a.m. on October 10, 1995, he observed Richards running and stumbling, almost falling, down Roswell Road and into an empty parking garage. There was no vehicular traffic in the area, and other than Richards, no pedestrian traffic. Brookhisen testified that the "social area" in which he observed Richards was one having a "high degree of people breaking into vehicles, especially that are parked in lots that aren't lighted" and that several store burglaries had occurred in the past several months. Driving his patrol car into the parking garage, Brookhisen saw Richards attempting to climb through a hole in a chain link fence situated around the ground floor of the garage. Brookhisen's suspicions were aroused by Richards's "out of the ordinary" behavior, and the possibility of wrongdoing on Richards's part occurred to Brookhisen because Richards appeared to be running from something. Brookhisen also testified that his purpose in following Richards was "to make sure he was okay" because he was stumbling and falling.

Brookhisen testified that upon seeing Richards attempt to climb through the fence, he asked that Richards step away from the fence by calling out, "Excuse me, sir, can you step down?" or "Excuse me, sir, can you step back to my vehicle for a moment?" Richards approached the patrol car and leaned his head on it. Brookhisen asked, "Are you okay?" and "What is the problem?" Richards replied that he had just crashed his car and told Brookhisen the location of

the car. Brookhisen noticed that Richards had glassy eyes, slurred speech, and smelled strongly of alcohol. According to Brookhisen, he stated to Richards either, "Why don't you get in the patrol car and we'll take a look at it," or "Have a seat in the patrol car. We'll take a look at the accident." Whatever Brookhisen's exact language, Richards entered the police car, and they drove to the nearby accident scene where Brookhisen discovered that Richards had struck a telephone pole. After examining the accident scene, Brookhisen asked Richards for his driver's license. Richards replied that it was in the glove box of the car and consented to Brookhisen's examining it. Brookhisen could not locate the license, however, and again questioned Richards concerning its location. Richards became very hostile, used abusive language, and called Brookhisen several names. Brookhisen then arrested Richards for DUI.

After hearing evidence, the trial court denied Richards's motion to suppress, concluding, among other things, that Richards's behavior on a city street at 4:00 a.m. and his admission that he had crashed his car, provided Brookhisen with a reasonable, articulable suspicion sufficient to justify further investigation. Richards maintains that he was seized when Brookhisen initially "summoned" him to the patrol car after observing him attempting to climb through the fence. He further argues that this seizure was not justified by a reasonable and articulable suspicion of criminal activity.

When reviewing a trial court's decision on a motion to suppress, we must construe the evidence favorably to uphold the trial court's findings and judgment, and the trial court's findings must be upheld if any evidence supports them. *Morgan v. State*, 195 Ga. App. 732, 735 (3) (394 SE2d 639) (1990). So construing the evidence, we conclude that Richards's Fourth Amendment rights were not violated by the stop.

Even assuming that Brookhisen's initial actions in calling out to Richards and telling him to step away from the fence amounted to a seizure, evidence was presented of a reasonable, articulable suspicion of wrongdoing. A police officer must possess "a founded suspicion, some necessary basis from which the court can determine that the detention was not arbitrary or harassing." *Brisbane v. State*, 233 Ga. 339, 341 (211 SE2d 294) (1974). Although Brookhisen did state that when he stopped Richards, he had no objective evidence that Richards had committed a crime, his suspicion that Richards could have been involved in wrongdoing was more than speculation, hunch, or caprice, unlike the officer's "intuition" in *Jorgensen v. State*, 207 Ga. App. 545 (428 SE2d 440) (1993). In *Jorgensen*, the arresting officer merely saw the defendant turn "in a normal fashion" into a parking lot prior to reaching a roadblock. The officer's intuition that defendant was avoiding the roadblock was not supported by any

"articulable fact." Id. at 546.

Here, in contrast, Richards was running, stumbling, at a "fast pace," down a city street during the early morning hours when businesses, restaurants, and bars were closed, behaving as if he were trying to hide or run from something. He stumbled into a parking deck, albeit empty, and then attempted to climb through a fence designed to protect the parking garage. Based on the totality of these circumstances, as in *Brisbane*, supra, in which a police officer stopped appellants' vehicle after observing it twice slowly pass an all night service station around 3:45 a.m., Richards's behavior "created a justifiable suspicion of [his] conduct so as to warrant the limited investigative detention." Id. at 343.

Brookhisen's investigation was not arbitrary or harassing; it was initially limited to asking Richards, "Are you okay?" and "What is the problem?" Although the investigation did evolve from these questions into an investigation of Richards's status as an intoxicated driver, this evolution did not affect the validity of the stop. After Brookhisen began talking with and observing Richards from a distance of three feet, he noticed Richards's glassy eyes, slurred speech, and strong odor of alcohol. Once he observed Richards's condition, Brookhisen had reasonable grounds to conduct further inquiry to determine whether Richards was engaged in other criminal activity. See *Crosby v. State*, 214 Ga. App. 753, 755 (449 SE2d 147) (1994). Under these circumstances, the trial court did not err in denying Richards's motion to suppress based on Fourth Amendment violations.

2. Richards contends the results of his chemical breath test should have been suppressed because Brookhisen failed to read him the appropriate implied consent warning mandated by OCGA § 40-5-67.1 (b). He further maintains that the evidence was insufficient to convict him in the absence of evidence of the breath test results. We agree that the test results should have been suppressed. The implied consent warning read by Brookhisen did not match exactly the words of OCGA § 40-5-67.1 (b), which applies to all cases involving offenses committed on or after April 21, 1995. OCGA § 40-5-67.1 (b.1). The offense in this case occurred in October 1995. It is therefore unlike those cases addressing the August 1995 amendments to OCGA § 40-5-67.1 (b); the offenses in those cases occurred prior to April 21, 1995, and the substance of the implied consent warning controlled over the exact wording or form.[1] The offense here clearly occurred at a time when Brookhisen was required to read the exact language mandated by OCGA § 40-5-67.1 (b). See generally *State v. Holcomb*, 219 Ga.

---

[1] See, e.g., *State v. Martin*, 266 Ga. 244 (466 SE2d 216) (1996); *State v. Hunter*, 221 Ga. App. 837 (473 SE2d 192) (1996); *State v. Golub*, 220 Ga. App. 810 (470 SE2d 331) (1996); and *Howard v. State*, 219 Ga. App. 228 (465 SE2d 281) (1995).

App. 231 (464 SE2d 651) (1995), noting that the specific language of OCGA § 40-5-67.1 (b) is mandatory in cases involving offenses that occurred on or after April 21, 1995. Because Brookhisen did not read the mandatory language of OCGA § 40-5-67.1 (b), the trial court erroneously denied Richards's motion in limine to exclude the results of Richards's chemical breath test.

Failure to suppress the breath test results was harmless here, however, because Richards stipulated during his bench trial that he drove while having a blood alcohol level of .207 in violation of OCGA § 40-6-391 (a) (4). Rather than try Richards's case to a jury, his counsel announced, "[T]o save the court time and to move this case to disposition, we are willing to stipulate to the facts that the State needs to support a conviction under [OCGA § 40-6-391 (a) (4)]." Defense counsel also recited that he preserved certain issues concerning probable cause for Richards's arrest and implied consent. The State and Richards then agreed to the following stipulation: "The defendant, Brian Richards, was on October 10, 1995, within the city limits of Atlanta, Georgia, and . . . in actual physical control of a moving vehicle while under the influence of alcohol; *and had a blood-alcohol level exceeding point-one-zero; that blood-alcohol level being point-two-zero seven*, in violation of [former OCGA § 40-6-391 (a) (4)."[2] (Emphasis supplied.) Additionally, to ensure that the stipulation was accurate, the trial court recapped its understanding of the stipulation. Defense counsel acknowledged that the trial court correctly recited the stipulation.[3] On the basis of the stipulation, the trial court found Richards guilty of violating OCGA § 40-6-391 (a) (4).

Richards's counsel stipulated to far more than facts; he stipulated the ultimate issue to be decided. He could have stipulated, for example, that Richards was driving an automobile on the streets of Atlanta and that the breath test results, if admissible, would have shown his blood alcohol level to be .207, while preserving the issue of admissibility for appeal.[4] Instead, he *twice* agreed on the record that Richards was driving with a blood alcohol level exceeding .10, in violation of former OCGA § 40-6-391 (a) (4). Even without considering

---

[2] The Solicitor recited these facts to the trial court, who asked defense counsel, "[D]o you concur that those are the facts?" Defense counsel answered, "Yes," while adding that Richards challenged probable cause.

[3] The trial court asked, "Did I state the stipulation correct[ly]?" Defense counsel answered, "[T]he stipulation is to the prima-facie case under (a) (4). It is alcohol concentration of point-one-zero grams or more within three hours of . . . operating a motor vehicle. *Yes, that is what we are stipulating to.*" (Emphasis supplied.)

[4] By way of extended analogy, one charged with murder might choose to expedite judicial proceedings, not by stipulating that he or she *murdered* the victim, but by admitting that he or she shot a gun at the victim and that the victim died as a result of the gunshot wound, while reserving for jury determination and appellate review issues such as whether the killing was accidental or justified, or whether the killing was a lesser degree of homicide.

the breath test results, sufficient evidence was presented to convict Richards; he expressly stipulated to his guilt. We therefore affirm. All other contentions are moot.

*Judgment affirmed. Andrews, C. J., and Pope, P. J., concur.*

DECIDED MARCH 6, 1997 — RECONSIDERATION DENIED MARCH 28, 1997 — 

*Monte K. Davis*, for appellant.

*June D. Green, Interim Solicitor, James M. Miller, Assistant Solicitor,* for appellee.