A97A2530. THE STATE v. FIELDING.
(494 SE2d 561)

RUFFIN, Judge.

On March 8, 1997, Kristen George Fielding was arrested for driving under the influence of alcohol in addition to other traffic violations. Fielding moved to suppress the results of the Intoxilyzer 5000 test administered to him, arguing that he was not advised of his implied consent rights as required by OCGA § 40-5-67.1 (b). The trial court granted the motion, and the state appealed. For the following reasons, we affirm.

"In cases involving the review of the grant or denial of motions to suppress or motions in limine, we must construe the evidence most favorably to uphold the findings and judgment of the trial court, and that court's findings as to disputed facts and credibility must be adopted unless clearly erroneous. [Cits.]" *Wells v. State*, 227 Ga. App. 521 (489 SE2d 307) (1997).

Viewed in this light, the record shows that during the early morning hours of March 8, a Lowndes County deputy sheriff noticed a car stopped in the middle of a two-lane road approximately fifty to one hundred feet from the road's intersection with Highway 41 South. Fielding was sitting in the driver's seat, leaning over onto the passenger's side of the car. The deputy sheriff initiated his blue lights, at which point Fielding drove to the intersection and stopped. According to the deputy sheriff, Fielding was unsteady on his feet, smelled of alcohol and had slurred speech and bloodshot eyes. Fielding failed field sobriety tests and was placed under arrest for DUI. The deputy sheriff then read Fielding an implied consent warning. Fielding agreed to submit to a state-administered test and was subsequently taken to the county jail where a test was conducted. Fielding declined an additional test of his own choosing.

In reading the warning, the deputy sheriff stated that "Georgia law requires you to submit to the state administered chemical *test* of your blood, breath, urine or other bodily substances. . . ." The warning required by OCGA § 40-5-67.1 (b) provides that "Georgia law requires you to submit to state administered chemical *tests* of your blood, breath, urine or other bodily substances. . . ." (Emphasis supplied.) The deputy sheriff's warning also deviated from the statuto-

rily mandated warning when he stated that "[a]fter first submitting to the required state tests, you are entitled to *an* additional chemical *test* of your blood, breath, urine. . . ." The statutory warning does not contain the word "an" and states that a person is entitled to "additional chemical *tests*." (Emphasis supplied.) OCGA § 40-5-67.1 (b).

In granting the suppression motion, the trial court, relying on *Richards v. State*, 225 Ga. App. 777, 779 (2) (484 SE2d 683) (1997), ruled that the officer was required to read the exact language of OCGA § 40-5-67.1 (b). The state argues on appeal that strict compliance with the Code section, rather than exact compliance, is all that is required. We disagree.

In 1995, the legislature redrafted in its entirety OCGA § 40-5-67.1 (b) in part to provide for the admissibility of breath samples. See Ga. L. 1995, p. 1160. The prior version of the Code subsection merely listed five rights of which a person stopped for DUI had to be apprised prior to administration of the test or tests. Ga. L. 1994, p. 1603. The former version, however, did not require that specific language be used in stating the warning. The former subsection also did not state that compliance with the subsection made the test results admissible against the person stopped, but merely provided that "[f]ailure to provide any notice required under this subsection shall not invalidate the suspension pursuant to this Code section of any driver's license." Ga. L. 1994, p. 1603.

The 1995 amendment, effective April 21, 1995, codified "the wording of the implied consent warning to be given to drivers stopped for DUI [and] . . . mandated different warnings which were based on the driver's classification." 12 Ga. St. U. L. Rev. 289, 291 (1995); Ga. L. 1995, p. 1160. The redrafted Code section provides that "[a]t the time a chemical test or tests are requested, the arresting officer *shall* select and read to the person the appropriate implied consent warning from the following: (1) Implied consent notice for suspects under age 21 . . . (2) Implied consent notice for suspects age 21 or over . . . (3) Implied consent notice for commercial motor vehicle driver suspects. . . ." (Emphasis supplied.) OCGA § 40-5-67.1 (b). After listing the warnings that had to be given, the new subsection added that "[i]f any such notice is used by a law enforcement officer to advise a person of his or her rights regarding the administration of chemical testing, such person shall be deemed to have been properly advised of his or her rights under this Code section and under Code Section 40-6-392 and the results of any chemical test, or the refusal to submit to a test, shall be admitted into evidence against such person."

One of the first cases interpreting the new subsection was *Martin v. State*, 217 Ga. App. 860 (460 SE2d 92) (1995), decided July

13, 1995. We noted in this case that "[u]nder former law, it [was] well-settled that a defendant [was] not entitled to a warning which tracks the exact language of the implied consent statute." (Citations and punctuation omitted.) Id. at 860-861. "OCGA § 40-5-67.1 was amended by the legislature to provide for the *specific* implied consent warning which law enforcement officers are required to give to one suspected of driving or being in actual physical control of a moving motor vehicle. . . ." (Emphasis supplied.) Id. at 860-861. We concluded that it was clear in amending the Code subsection that the legislature intended to mandate the warning to be given. Id. Thus, we said, "our role is to simply compare the warning given to the warning required." Id. at 862. Because the 1995 amendment was made applicable to cases pending as of April 21, 1995, we held that the officer's warning to Martin did not comply with any of the warnings of the amended subsection. Id.

After this decision was rendered, the legislature, during the 1995 Extraordinary Session, amended OCGA § 40-5-67.1 again to add OCGA § 40-5-67.1 (b.1). Subsection (b.1) was made effective August 18, 1995, and rendered the April amendment to subsection (b) applicable only to stops made after April 21, 1995. Ga. L. 1995, Ex. Sess., p. 5. Accordingly, when the Supreme Court of Georgia received Martin's case upon the State's appeal from our July 21, 1995 decision, it reversed since Martin was stopped prior to April 21, 1995. *State v. Martin*, 266 Ga. 244 (466 SE2d 216) (1996). The Supreme Court concluded that while we were correct in reversing the trial court, given the law existing at that time, the law had since changed. Id. at 245. The court agreed with this Court, however, that the language in the April amendment was mandatory. Id. Based on new subsection (b.1) and the Supreme Court's decision, we vacated our opinion of July 21, 1995. See *Martin v. State*, 221 Ga. App. 630 (474 SE2d 195) (1996).

In cases decided subsequent to our first *Martin* decision, we have consistently ruled that the implied consent warnings of amended OCGA § 40-5-67.1 (b) are mandatory. See *State v. Golub*, 220 Ga. App. 810 (470 SE2d 331) (1996) (OCGA § 40-5-67.1 requires "the reading of precise implied consent language at the time a chemical test or tests are requested"); *Park v. State*, 220 Ga. App. 215 (469 SE2d 353) (1996) (by amending OCGA § 40-5-67.1 (b), the legislature was requiring "that specific language be used as the implied consent warning"); *State v. Boone*, 221 Ga. App. 256 (471 SE2d 53) (1996) (OCGA § 40-5-67.1 (b) "mandates that specific language be read upon arrest"); *Howard v. State*, 219 Ga. App. 228 (465 SE2d 281) (1995); *State v. Hunter*, 221 Ga. App. 837 (473 SE2d 192) (1996). However, all of the above cases were decided based on the former version of

OCGA § 40-5-67.1 since the subject offenses occurred prior to April 21, 1995.

One of the first cases in which we found the current version of OCGA § 40-5-67.1 applicable is *Richards*, supra. We agreed with Richards that the trial court erroneously denied his motion to exclude his breath test results because "[t]he implied consent warning read by [the arresting officer] did not match *exactly* the words of OCGA § 40-5-67.1 (b), which applies to all cases involving offenses committed on or after April 21, 1995." (Emphasis supplied.) Id. at 779-780. Because Richards' offense occurred in October 1995, his case was unlike *Martin, Hunter, Golub,* and *Howard,* supra, where "the substance of the implied consent warning controlled over the exact wording or form." Id. Richards' "offense . . . clearly occurred at a time when [the arresting officer] was required to read the exact language mandated by OCGA § 40-5-67.1 (b)." *Richards,* supra at 779.

In interpreting statutes, we are to "look diligently for the intention of the General Assembly, keeping in view at all times the old law, the evil, and the remedy." OCGA § 1-3-1 (a). Prior to the legislature enacting the April 1995 amendment to OCGA § 40-5-67.1 (b), both trial and appellate courts expended great time and effort in determining whether the omission of certain words or the addition of other words in an implied consent warning made the warning defective to the extent it did not inform a DUI suspect of all of his or her rights. See, e.g., *Howard,* supra (under old law, failure to advise suspect that independent test could be of "blood, breath, urine, or other bodily substances" was inconsequential since warning given mentioned those substances when it provided that "chemical tests" could be performed at the state's request); *Park,* supra (failure to inform suspect of right to a second test by a "qualified" person of his choosing, omitting the word "qualified," did not render the test results inadmissible). As we have concluded previously, the prior law did not entitle a suspect "to a warning which tracks the exact language of the implied consent statute; [and] the sufficiency of the warning [was] to be judged by its content and not its form." *Golub,* supra at 811. In promulgating the 1995 amendment, the legislature obviously intended to provide a bright line test that clarified the specific language to be given in a warning and to alleviate the need for a case-by-case determination of what warnings are and are not legally sufficient. To hold, as the state suggests in the instant case, that strict compliance with OCGA § 40-5-67.1 (b) does not mean reading the warnings exactly as written, would effectively return us to the state of the law prior to the 1995 amendment. The substance of the implied consent warning would again control over form. We decline to make such a holding absent a clear mandate from our legislature.

Accordingly, as it is clear that the arresting officer did not read Fielding the appropriate warning exactly as set forth in OCGA § 40-5-67.1 (b) and that the amended Code section applied given the arrest date of March 8, 1997, the trial court's finding that the arresting officer did not read Fielding the required warning was not clearly erroneous. See *Wells*, supra; *Richards*, supra.

*Judgment affirmed. Birdsong, P. J., and Eldridge, J., concur.*

DECIDED DECEMBER 4, 1997.

*Richard W. Shelton, Solicitor*, for appellant.
*Samuel F. Greneker, William C. Head*, for appellee.

