A98A1020, A98A1021. THE STATE v. KIRBABAS; and vice versa.
(502 SE2d 314)

ELDRIDGE, Judge.

On June 7, 1997, Margaret Kirbabas, defendant-appellee and appellant, was observed weaving in her car on Towne Lake Parkway by Officer David Wooldridge of the Woodstock Police Department and was stopped. Officer Wooldridge saw the defendant cross completely the right lane marker and then drift to the left to partially cross the centerline; such weaving and defendant's slow speed raised Wooldridge's articulable suspicion that the defendant could be impaired.

Upon beginning his investigatory stop, Wooldridge smelled about the defendant the odor of alcohol and observed a slightly slurred speech. He asked the defendant if she had been drinking; she said yes. He asked for and received her driver's license and insurance card, checked them, and placed them in his ticket book in his patrol car while he completed his investigation.

Wooldridge requested that the defendant undergo the field sobriety tests, and she agreed to do them. Wooldridge had been certified to conduct the standardized field sobriety tests and had conducted 15 to 20 field sobriety tests at that time.

Upon performing the horizontal gaze nystagmus ("HGN") test, he noted six positive indications of alcohol impairment. Defendant next performed the walk and turn test and exhibited difficulty with balance, broke her stance during instruction, and made an incorrect turn. Defendant next did a one-leg stand but put her foot down prematurely four times and had to raise her arms to maintain balance; she was deemed to have failed this test by Wooldridge. Finally, the defendant was administered an alco-sensor breath test, which indicated positive for alcohol.

Wooldridge came to the opinion from his observations and investigation that the defendant was a less safe driver under the influence of alcohol. He arrested her, placed her in handcuffs, and read her the Georgia implied consent notice. She stated that she did not want to take the State-administered breath test. At the Woodstock Police Station, defendant agreed to submit to the Intoxilyzer breath test.

However, defendant insufficiently blew into the tube for the audible tone to be activated. After being given another chance to take the test, defendant refused because she was "scared." Wooldridge then informed the defendant "Fine. I'll suspend your license." He then prepared a Department of Public Safety ("DPS") Form 1205 for suspension.

At the motion to suppress hearing, the trial court held any field sobriety test results after the HGN were inadmissible because the defendant was in custody under arrest and had not been given a *Miranda* warning.

## Case No. A98A1020

The State's sole enumeration of error is that the trial court erred in finding that the defendant was under arrest following the administration of the HGN test, and, prior to the rest of the field sobriety tests, because, at that time, the officer "believed" that the defendant was probably an impaired driver; thus, the trial court concluded that *Miranda* warnings should have been given before the field sobriety tests were conducted. We agree with the State such conclusion was error under the facts of this case.

"For the proscriptions of *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) [(1966)] to apply, 'a person must be taken into custody or otherwise deprived of his freedom of action in some significant way.' *Lobdell v. State*, 256 Ga. 769, 773 (6) (353 SE2d 799) [(1987)]. 'In determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, but "the ultimate inquiry is simply whether there (was) a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." (Cits.)' *Stansbury v. California*, 511 U. S. 318, 322 (114 SC 1526, 128 LE2d 293) [(1994)]." *McConville v. State*, 228 Ga. App. 463, 465 (491 SE2d 900) (1997).

"The test for determining whether a person is 'in custody' at a traffic stop is if a reasonable person in the *suspect's* position would have thought the detention would not be temporary. *Berkemer v. McCarty*, 468 U. S. 420, 442 (104 SC 3138, 82 LE2d 317) (1984)." (Emphasis supplied.) *Hughes v. State*, 259 Ga. 227, 228 (378 SE2d 853) (1989); see also *Price v. State*, 269 Ga. 222 (498 SE2d 262) (1998); *State v. O'Donnell*, 225 Ga. App. 502, 503 (1) (484 SE2d 313) (1997).

In *Hughes v. State*, supra, the arresting officer made an arrest when he told the defendant "that he was not free to leave the scene of the initial stop" so that the field sobriety tests were performed after an arrest without giving a *Miranda* warning. In *State v. O'Donnell*, supra, the defendant, after a serious accident, left the scene and was

involved in a second accident; the defendant was arrested and brought back to the scene of the first accident before being given the field sobriety tests and without receiving a *Miranda* warning. In this case, the officer did not place the defendant under arrest until after the field sobriety and alco-sensor tests had been administered.

Under both *Berkemer v. McCarty*, supra, and *Hughes v. State*, supra, it is the reasonable belief of an ordinary person under such circumstances, and *not* the subjective "belief" or intent of the officer, that determines whether an arrest has been effected. See *Morrissette v. State*, 229 Ga. App. 420, 422 (1) (a) (494 SE2d 8) (1997). Thus, when an officer tells a defendant that she is going to jail, whether or not she consents to submit to a field sobriety test, "[u]nder these circumstances we must conclude that, having been informed that she was going to jail, a reasonable person would have believed that the detention was not temporary. Therefore, the failure to give the *Miranda* warnings renders evidence regarding the field sobriety tests inadmissible." *Price v. State*, supra at 225 (3).

Here, however, absent the officer making any statement that would cause a reasonable person to believe that she was under arrest and not temporarily detained during an investigation, the officer's "belief" that probable cause exists to make an arrest does not determine when the arrest is effectuated until the officer overtly acts so that a reasonable person would believe she was under arrest.

" 'In effect, (defendant) would have us rule that once a police officer has probable cause to arrest, he must arrest and *Mirandize*. But that is not the law. Whether a police officer (subjectively) focused his unarticulated suspicions upon the individual being questioned is of no consequence for *Miranda* purposes. *Stansbury v. California*, [supra].' *Hodges v. State*, 265 Ga. 870, 872 (2) (463 SE2d 16) [(1995)]." *McConville v. State*, supra at 465-466.

Under *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968), an officer may make an investigatory stop where the officer has a reasonable articulable suspicion of criminal activity. This constitutes "brief 'seizures' that must be supported by reasonable suspicion" but does not constitute an arrest requiring that *Miranda* warnings be given in order to question. *McClain v. State*, 226 Ga. App. 714, 716 (1) (487 SE2d 471) (1997); see also *Wells v. State*, 227 Ga. App. 521, 523 (1) (489 SE2d 307) (1997); *Crosby v. State*, 214 Ga. App. 753 (449 SE2d 147) (1994); *Cheatham v. State*, 204 Ga. App. 483, 484 (1) (419 SE2d 920) (1992). "Momentary detention and questioning are permissible if based upon specific and articulable facts, which, taken together with rational inferences from those facts, justify a reasonable scope of inquiry not based on mere inclination, caprice or harassment. An authorized officer may stop an automobile and conduct a limited investigative inquiry of its occupants, without prob-

able cause, if he has reasonable grounds for such action — a founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing. A *Terry* stop must be justified by specific, articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct." (Citations and punctuation omitted.) *Fritzius v. State*, 225 Ga. App. 642, 643-644 (484 SE2d 743) (1997); *Buffington v. State*, 228 Ga. App. 810, 811 (492 SE2d 762) (1997). "The temporary detention of a motorist based upon probable cause that [she] violated a traffic law does not implicate the Fourth Amendment's prohibition against unreasonable searches and seizures, even if a reasonable officer would not have made the stop absent an ulterior motive. [Cit.] In other words, if the arresting officer witnessed the driver breaking even a relatively minor traffic law, a motion to suppress under the Fourth Amendment arguing that the stop was pretextual must fail. See *Jackson v. State*, 267 Ga. 130, 131 (5) (a) (475 SE2d 637) (1996)." *Buffington v. State*, 229 Ga. App. 450, 451 (494 SE2d 272) (1997); see also *Brantley v. State*, 226 Ga. App. 872, 873 (487 SE2d 412) (1997); *Hines v. State*, 214 Ga. App. 476, 477 (448 SE2d 226) (1994).

The objective test is that "the police can be said to have seized an individual 'only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *Michigan v. Chesternut*, 486 U. S. 567, 573 (108 SC 1975, 100 LE2d 565) (1988); see also *Mosely v. State*, 269 Ga. 17 (495 SE2d 9) (1998); *State v. Wright*, 221 Ga. App. 202, 207 (4) (470 SE2d 916) (1996). For seizure of a person "there must be either the application of physical force, however slight, or, where that is absent, submission to an officer's 'show of authority' to restrain the subject's liberty. See generally *California v. Hodari D.*, 499 U. S. 621 (1) (a), (1) (b) n. 1, (1) (g) (111 SC 1547, 113 LE2d 690) [(1991)]." Id. The officer in this case did not seize and arrest the defendant until he placed the handcuffs on her at the completion of all the investigatory tests; at that time he clearly had probable cause for the arrest for DUI.

Since there was no arrest during the temporary investigatory stop to conduct the field sobriety tests and administer the alco-sensor test to the defendant with her consent, then the defendant was not deemed in custody, seized, or "under arrest" for *Miranda* purposes even if the officer had possession of her driver's license and insurance card and temporarily detained her. *Sisson v. State*, 232 Ga. App. 61, 66 (4) (497 SE2d 642) (1998); *Morrissette v. State*, supra at 421-422; *State v. Pastorini*, 222 Ga. App. 316, 317-318 (1) (474 SE2d 122) (1996).

Further, "field sobriety tests are not 'statements.' They are 'not evidence of a testimonial or communicative nature.' They are therefore not inadmissible under the Fifth Amendment to the U. S. Consti-

tution even if the accused was 'in custody' and no *Miranda* warnings have been given. *Hughes,* supra at 228 (2) (b)." *Morrissette v. State,* supra at 421-422. Therefore, no *Miranda* warnings were necessary, because such temporary investigatory stop does not trigger the requirements of *Miranda. Morrissette v. State,* supra at 422; *State v. Pastorini,* supra at 317-318; *Coates v. State,* 216 Ga. App. 93, 95 (453 SE2d 35) (1994); *Crum v. State,* 194 Ga. App. 271, 272 (390 SE2d 295) (1990); *Lipscomb v. State,* 188 Ga. App. 322 (372 SE2d 853) (1988); *Montgomery v. State,* 174 Ga. App. 95 (329 SE2d 166) (1985).

The trial court erred as a matter of law in applying the wrong legal standard for arrest and in suppressing the evidence of the field sobriety tests because no *Miranda* warnings had been given. The trial court erred in ruling that the *Miranda* warnings had to be administered as soon as the *officer* subjectively "believed" that he had probable cause to arrest the defendant for driving under the influence, prior to the completion of the field sobriety tests and the administration of the alco-sensor test, rather than after the officer completed his probable cause inquiry and actually arrested the defendant.

### Case No. A98A1021

1. The defendant's first enumeration of error is that the trial court erred in finding that the implied consent warnings were proper, although the officer stated three times "I will suspend" your license and did not trace the exact language of OCGA § 40-5-67.1 (b) (2). We do not agree.

(a) After placing the defendant under arrest, Officer Wooldridge read to the defendant the exact language of the statute contained in Ga. L. 1995, pp. 1160-1161, § 1 (OCGA § 40-5-67.1 (b) (2)). See *Richards v. State,* 225 Ga. App. 777 (484 SE2d 683) (1997); see also *State v. Halstead,* 230 Ga. App. 208 (496 SE2d 279) (1998); *State v. Barfield,* 230 Ga. App. 141 (495 SE2d 622) (1998); *State v. Fielding,* 229 Ga. App. 675, 678 (494 SE2d 561) (1997). When the officer testified at the suppression hearing, he did misread in court the warning, stating: "Georgia law requires you to submit to *a* state administered chemical *test.*" However, the videotape was introduced and played, which showed that on the scene, the officer correctly stated "to submit to state administered chemical *tests.*" Both the officer's testimony, the videotape, and the statute state the implied consent warnings correctly despite defendant's contentions to the contrary. See *State v. Hassett,* 216 Ga. App. 114 (453 SE2d 508) (1995); *State v. Leviner,* 213 Ga. App. 99 (443 SE2d 688) (1994).

"In cases involving the review of the grant or denial of motions to suppress or motions in limine, we must construe the evidence most

favorably to uphold the findings and judgment of the trial court, and that court's findings as to disputed facts and credibility must be adopted unless clearly erroneous. [Cits.]" *Wells v. State*, supra at 521; *State v. Fielding*, supra at 675.

(b) While the officer may have *subsequently*, after the defendant's refusal to submit to a breath test and after the initial warning at the time of arrest, incorrectly repeated all or portions of the statutory warning, such does not negate or nullify the giving of the warning correctly in compliance with the statutory mandate, because the officer was under no duty to give *further* warnings or instructions after the implied consent warning was given properly at the time of arrest. *Wells v. State*, supra at 524; see generally *Dawson v. State*, 227 Ga. App. 38, 40 (2) (488 SE2d 114) (1997). A defendant is entitled under the statute to have the implied consent warning given to her only once. OCGA § 40-5-67.1 (b) (2); *Dawson v. State*, supra at 40.

(c) The defendant, also, contends that the officer told her three times after he had completed the implied consent warning and after her initial refusal to submit to the breath test, that if she did not submit to a breath test, then he would suspend her driver's license for one year. Earlier, the officer had correctly read to her that her license would be suspended for one year for refusal to submit to the State-designated and -administered test. The implied consent warning does not specify how such provision would be enforced if she refused, because the implied consent warning does not mandate the disclosure of such information as a part of the warnings. Thus, the officer was under no obligation to inform the defendant how her license would be suspended for her refusal to take the State chemical test. *Wells v. State*, supra at 524.

The officer was the agent for the State in the enforcement of the implied consent law, in providing the warning, in choosing the test, in administering the test, in initiating any sanction proceedings, and in providing the evidence of refusal. Therefore, for all practical purposes for the defendant, the officer was the State. While it is, in fact, the DPS that conducts the hearing to suspend the driver's license for refusal to submit to a State-designated test, it is the officer that initiates any suspension proceeding and provides the evidence of refusal. See OCGA §§ 40-5-67.1; 40-5-67.2. Therefore, such statement was not false or misleading and directly and personally brought home to the defendant the consequences of her refusal. In any event, there was no harm shown by the defendant. *Wells v. State*, supra at 524.

2. The defendant's final enumeration of error is that the trial court erred in finding that the officer had not engaged in an unconstitutional pretextual stop under the Georgia Constitution by looking for a reason to stop the driver. We do not agree.

Contrary to the defendant's interpretation of *Gary v. State*, 262

Ga. 573, 574-575 (422 SE2d 426) (1992), *Gary v. State* was decided, not on Georgia constitutional grounds, but upon statutory grounds under OCGA § 17-5-30. The Supreme Court held that the "good faith" exception under the federal constitutional standards did not apply under state law, because legislatively, "the State of Georgia has chosen to impose greater requirements upon its law enforcement officers than that required by the United States Constitution, as interpreted by the U. S. Supreme Court." Id. at 574-575.

The protection against unreasonable search and seizure of a person comes under Art. I, Sec. I, Par. XIII of the 1983 Constitution of Georgia. Such constitutional provision is similar to the provisions of the Fourth Amendment and is construed in the same way by Georgia appellate courts. *Curry v. State*, 255 Ga. 215, 217 (1) (336 SE2d 762) (1985); *Mooney v. State*, 243 Ga. 373, 375 (1) (254 SE2d 337) (1979); *Cross v. State*, 225 Ga. 760, 767 (171 SE2d 507) (1969); *Smoot v. State*, 160 Ga. 744 (128 SE 909) (1925); *Oswell v. State*, 181 Ga. App. 35, 36 (351 SE2d 221) (1986); *Wells v. State*, 180 Ga. App. 133 (348 SE2d 681) (1986); *Bunn v. State*, 153 Ga. App. 270 (265 SE2d 88) (1980); *Cuevas v. State*, 151 Ga. App. 605, 612 (260 SE2d 737) (1979). In regard to the interpretation of the Fourth Amendment and the Georgia Constitution regarding seizure of a person, this Court has held: "Since the standard to be applied is the same, it is apparent that the protection against unreasonable searches provided in the Georgia Constitution is the same as that provided by the United States Constitution." *Wells v. State*, 180 Ga. App. 134 (2); see also *Cuevas v. State*, supra at 612.

The Supreme Court of Georgia rejected the argument that a pretextual arrest for parole violation violates the Fourth Amendment in *Jackson v. State*, supra at 131 (5), citing *Whren v. United States*, 517 U. S. 806 (116 SC 1769, 135 LE2d 89) (1996). See also *State v. Bowen*, 231 Ga. App. 95 (498 SE2d 570) (1998); *Taylor v. State*, 230 Ga. App. 749 (498 SE2d 113) (1998); *State v. Aguirre*, 229 Ga. App. 736, 738 (494 SE2d 576) (1997); *Buffington v. State*, 229 Ga. App. 450; *Buffington v. State*, 228 Ga. App. 811; *Brantley v. State*, supra at 873. Even though a reasonable officer would not make a stop for a minor traffic offense absent an ulterior motive, such pretextual stop, where probable cause for the minor traffic offense exists, does not violate the Fourth Amendment and would not violate the Georgia Constitution, either. See generally *Taylor v. State*, supra; *Buffington v. State*, 229 Ga. App. 451. However, we have "specifically determined that an officer's observation of a motorist's 'weaving' may serve as sufficient reason to warrant an investigative stop for a possible DUI violation. [Cits.]" *State v. Diamond*, 223 Ga. App. 164, 166 (477 SE2d 320) (1996); *State v. Bowen*, supra.

*Tate v. State*, 264 Ga. 53, 54-57 (2), (3) (440 SE2d 646) (1994) did

not hold pretextual stops were illegal per se; it held that the finding of the trial court on a motion to suppress must be accorded great deference in the finding of facts and of credibility and that such decision should not be set aside by the appellate court unless clearly erroneous. The Supreme Court held: "[s]ince the trial court's factual determination that the deputy's testimony that he stopped [the defendant] for a valid purpose was not credible, and since the conclusion regarding credibility is supported by the evidence and is not clearly erroneous, our review of the law applied to these facts supports the trial court's legal determination that the stop was pretextual and would not have been made by a reasonable officer in the absence of the invalid purpose. [Cit.]" Id. at 57.

In this case, the videotape clearly showed that the defendant, although not excessively, weaved within the lane, went onto the shoulder, and partially crossed the centerline. Therefore, the trial court's determination that the officer had a "reasonably articulable suspicion" that supported stopping the defendant for weaving was not clearly erroneous. *Tate v. State*, supra at 57. If there was a legal reason to stop the defendant for a traffic violation, then it cannot, either legally or constitutionally, be "pretextual" under the Fourth Amendment and the Georgia Constitution. *Whren v. United States*, supra; *Jackson v. State*, supra at 131.

*Judgment affirmed in Case No. A98A1021. Judgment reversed in Case No. A98A1020. McMurray, P. J., and Blackburn, J., concur.*

DECIDED MAY 6, 1998.

*G. Channing Ruskell, Solicitor, Thomas J. Melanson, Barry W. Hixson, Assistant Solicitors*, for appellant.
*John B. Sumner*, for appellee.